## UNITED STATES v. RYERSON et al.
## RYERSON et al. v. UNITED STATES.
### Nos. 7133, 7134.

Circuit Court of Appeals, Seventh Circuit.
July 9, 1940.

Writ of Certiorari Granted Nov. 12, 1940.

See 61 S.Ct. 142, 85 L.Ed. ——.

Laird Bell, William N. Haddad and James P. Johnson, all of Chicago, Ill., for plaintiffs.

Edward First, Asst. Atty., Gen., Wm. J. Campbell, of Chicago, Ill., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Arthur L. Jacobs, Sp. Assts. to Atty. Gen., for defendant.

Before TREANOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

TREANOR, Circuit Judge.

This action was brought in the District Court under the Tucker Act.[1] to recover gift taxes for the years 1934 and 1935. The taxes were assessed by the Commissioner of Internal Revenue and have been paid by the taxpayer. Recovery is sought on the ground that the taxes were wrongfully exacted.

Two questions are presented on appeal. One question is whether in case of a gift under a trust agreement only one exclusion of $5,000 is allowed for the trust as the donee or whether an exclusion is allowed for each of the beneficiaries as a donee; and the second question involves the measure of value of four fully paid life insurance policies, the assignments of which constituted the gifts in question.

The facts are not in dispute and will be indicated sufficiently in the course of our discussion.

In respect to the method of determining the value of a gift of a fully paid life insurance policy the District Court stated as a conclusion of law that the value "should be based upon the price that any person of the same age, sex, and condition of health as the insured would have to pay for a similar policy in the same insurance company on the date the gift was made."

The plaintiffs[2] contend that the District Court was in error in stating such conclusion of law and it is their contention that the proper measure of value of a paid up life insurance policy is the cash surrender value.

The only statutory provision which is relevant reads as follows: "If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift."[3] The foregoing provision is so general in its terms as to require some interpretative regulation. The Act was passed in 1932 and in 1933 the following treasury regulation was adopted: "The irrevocable assignment of a life insurance policy * * * constitutes a gift in the amount of the net cash surrender value, if any, plus the prepaid insurance adjusted to the date of the gift." In 1936 a new regulation was issued which accords with the ruling of the District Court and the contention of the United States.

---

[1] 28 U.S.C.A. § 41 (20).

[2] The suit was instituted by the taxpayer who died during the pendency of the appeals. Her executors were substituted as parties by order of this Court.

[3] Sec. 506, Revenue Act of 1932, 47 Stat. 169, 248, 26 U.S.C.A.Int.Rev.Code, § 1005.

In Helvering v. Winmill[4] the Supreme Court stated the generally recognized rule that "Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law." In Helvering v. Cronin[5] the Circuit Court of Appeals for the Eighth Circuit discussed the 1933 regulation, and the following pertinent excerpt is from its opinion: "If the gift tax is to be computed by the original regulation of 1933, the taxpayer's return was correct; if by the regulation of 1936, the Commissioner is right. If the regulation of 1933 were invalid because inconsistent with the statute, the 1936 regulation would be applicable. * * * It is not claimed, however, that the 1933 regulation is invalid. It had the approval of Congress by the renactment without material change of section 506 of the Revenue Act of 1932 in the Revenue Acts of 1934 and 1935. That regulation, therefore, had the effect of law. * * * Since it was in effect on the date of the gift it rules the determination of the value of the policies. The 1936 regulation can not be given retroactive effect. * * *"

The Courts of Appeals in the Third, Fourth and Fifth Circuits are in accord with the reasoning and holding of the Eighth Circuit in Helvering v. Cronin.

▮ When the Commissioner, with the approval of the Secretary, promulgates an administrative regulation which the Commissioner is authorized by the Revenue Act to promulgate, such regulation, by force of the Act of Congress, has the effect of law. In the Gift Tax Act Congress does not designate the factors which shall be taken into consideration in determining the amount of a gift. Congress merely provides that if the gift is made in property, the *value* thereof shall be considered the amount of the gift. There is no fixed, general rule of law which determines value of property. The factors entering into the concept of value vary with types of property and with the purpose for, or use to be made of, the valuation. Likewise, the relative weight to be attached to the different factors may vary. In view of the very general and indefinite standard fixed by Congress for the determination of the amount of the gift of property it became a practical necessity for the Commissioner to designate some factual test of value which could be used to fix the amount of the gift in terms of money. If the test, or measure of value, which was adopted by the Commissioner in 1933 fell within the standard fixed by the Act, and if it afforded a reasonably accurate measure of the monetary value of the gift, the regulation embodying such test or measure was authorized by Congress and had the force of law. The fact that some other test or measure might have been reasonable, or the fact that the regulation embodying the first measure might later be modified and still represent a valid exercise of power by the Commissioner, does not in any way vitiate the validity, and the binding force, of the first regulation during the period that it was officially recognized and enforced.

We are not concerned with a regulation which embodies an erroneous construction of an Act of Congress and which, therefore, would be invalid. In such a case a substituted regulation embodying the correct construction would not represent a change in the law but would constitute a correct expression of the law. Nor do we have an example of an administrative construction by administrative practice, in which case, if the construction is reasonable, courts will give great weight to the practical construction as evidencing the legislative intent.

▮ The United States Government urges that "The cash surrender value of the policies is not their fair market value for gift tax purposes"; and states that the fair market value of the fully paid life insurance policies is not the surrender value but the amount which would have to be paid to duplicate the policies on the date of the gift. But the cost of duplication is not understood generally to measure the "fair market value" of property. The cost of duplication affords some evidence of what a "willing buyer" would pay and may be considered along with other evidence; but it is not the measure of the fair market value of property.

▮ We are of the opinion that, for purposes of evaluating a fully paid life

---

4 305 U.S. 79, 59 S.Ct. 45, 46, 83 L.Ed. 52.

5 106 F.2d 907, 909.

insurance policy, the common test of "the fair market price or value" has no significance. In view of the peculiar type of property involved, the problem for the Commissioner was to devise a fair and appropriate measure of value which reasonably could be considered the amount of the gift. We are of the opinion that the cash surrender value constitutes a fair measure of the value of a fully paid life insurance policy for gift tax purposes. The parties stipulated that "no greater amount could have been obtained or realized upon the said policies by surrendering them or borrowing on them, or otherwise, than these cash values." The District Court found the foregoing to be a fact. If "fair market price" has any significance for the present question it would seem that the cash surrender value more nearly conforms to the fair market value test than does the cost of duplication. Such was the thought expressed by the Board of Tax Appeals in Haines v. Commissioner:[6] "The fact that insurance companies assume risks and make a charge for doing so which reduces the salable value of the contract from the moment of its issue is of no importance. The true test of value is what such contracts can be sold for, not what it will cost to turn around and buy another one from the insurance company which chooses to make a service charge for issuing another."

The United States urges that even if the regulation of 1933 be applied, consideration has not been given to that part of the regulation which requires that there be added to the net cash surrender "the prepaid insurance adjusted to the date of the gift." We think it is apparent that the requirement of "prepaid insurance" applies to policies upon which current premiums are still being paid. In the case of a fully paid insurance policy the cash surrender value reflects the increased value of the policy due to the fact that the insurance is fully paid up.

█ The United States also argues that the cash value is only the liquidation value of the investment of the policy, and does not include the value of its protection feature. But "the protection in the face amount of the policy payable at * * * the insured's * * * death" represents merely future accretion to the present surrender value of the policy which the assignee will receive if he retains, until the death of the insured, the ownership of what may be designated with reasonable accuracy the invested present surrender value. Making due allowances for costs of administration which are properly allocable to an insurance policy, the cash surrender value at any particular time is approximately the present worth of the face of the policy as of the "expectancy" date of the death of the insured. Actually, in any given case, there may be considerable variation from the average life expectancy which is taken as the basis of computation. That, however, is a possibility which cannot be considered in fixing the value of an insurance policy during the lifetime of the insured. In short, in computing values of contracts of insurance we cannot ignore the basic data upon which all such contracts are predicated and which enter into all determinations of values which are fixed by the contract.

We conclude that the 1933 regulation established a fair measure of the value of the gift property, consisting of fully paid up insurance policies; that under the Revenue Act the Commissioner possessed the authority to make such regulation and that such regulation had the force of law during the taxable years in question and controlled the determination of the amount of the gifts.

Section 504(b), 26 U.S.C.A.Int.Rev. Code, § 1003(b), provides that in the case of gifts made to any person by the donor during the calendar year "the first $5,000 of such gifts to such person shall not * * * be included in the total amount of gifts made during such year." In the instant case the insurance policies were assigned to trustees for the benefit of more than one beneficiary under each trust and the precise question for consideration is whether there shall be one exclusion for each trust, on the theory that the gift is made to the trustee as donee, or whether there shall be an exclusion of the "first $5,000" for each of the beneficiaries under the trust. The District Court stated as its conclusion of law that "Where a gift is made in trust are the beneficiaries, rather than the trust, the donees of the gift for the purpose of determining the number of exclusions of $5,000 allowable under Sec. 504(b) of the Revenue Act of 1932." The defend-

---

6 37 B.T.A. 1013, affirmed in 3 Cir., 104 F.2d 854.

ant, United States of America, contends that the District Court was in error in so holding.

The United States urges that its position is sustained by the decision of this Court in Commissioner v. Wells.[7] In that case the taxpayer had created a trust for the benefit of each of his three children. Each of the trust instruments directed the trustee to collect the income from the trust corpus and to accumulate the net income until the child named therein should attain the age of twenty-one years, or until death if the child should die before that time. Upon reaching the age of twenty-one years each child was to receive the trust income until he reached the age of thirty, or until the death of his mother, who was trustee, whichever event occurred first, and then each child was to receive the corpus. In his tax return the taxpayer reported the gifts and deducted therefrom $5,000 from each trust. The Commissioner disallowed the deduction of the $5,000 for each on the ground that the gifts were of future interests, in respect to which no exclusion or deduction is allowed. Upon taxpayer's petition for a redetermination, the Board of Tax Appeals held that the gifts were not of future interests and that there was no deficiency. This Court affirmed the decision of the Board.

In reaching its decision in the foregoing case this Court called attention to the statutory provision that "the term 'person' means an individual, a trust or estate, a partnership, or a corporation"; and the Court concluded that each of the three trusts was a person capable of accepting the gifts in question as a donee. Perhaps the statement in the opinion of this Court which is most significant for our present purposes is quoted by the United States in its brief: "Under the undisputed evidence all the elements of a consummated gift were present. With respect to the donor the transfer was not in futuro. He thereby divested himself of all vestige of title, and no future act on his part could modify or abrogate his act. Likewise, the donees were competent to accept the gifts, and they did so immediately. True, they were trusts, but they were no different from persons, for the Act so states. They took immediate title to and possession of all the

property from the donor; they put it to instant use for the directed purpose of building up an estate for the ultimate and contingent beneficiaries, who were named specifically. The fact that those beneficiaries did not come into possession of the corpus until some time in the future, dependent upon some contingency, does not make the donor's act any the less a completed transfer to the trustees. The fact must not be overlooked that the Act involved relates to transfers and not receipts."

By the terms of Section 504(b) it is recognized that there may be a gift of future interests in property as well as a gift of present interest. There must be both a donor and a donee in order to have a completed gift, although as suggested in the Wells case, it is the transfer of property which is taxed and not the receipt. But there is no gift in the absence of an identifiable donee who receives the property. In the Wells case this Court was confronted with the contention by the United States that because of postponement of enjoyment by the beneficiaries, the gifts were gifts of future interests in property and that, as a consequence, the $5,000 exclusion provided for by the Gift Tax Act for gifts, other than gifts of future interests, was not available. This Court expressed some doubt about the meaning of the regulations which defined future interests, but that question became immaterial since, in the opinion of the Court, the donees were the trusts.

Plaintiffs suggest that in the Wells case "with an equal number of beneficiaries and trusts, the question was of no consequence." And the plaintiffs add that "in the case of one trust for several beneficiaries, or several trusts for one beneficiary, the distinction is vital." It is true that in the Wells case the decision of this Court did not directly decide whether the number of exemptions would be limited to one for each trust or would be determined by the number of individual beneficiaries of each trust. But the conclusion of this Court, and its holding, that an exclusion of $5,000 was permissible under the facts of the case, rested upon the preliminary holding that each trust was a person and, as such person, was the donee of a gift of a present interest in property which had been trans-

7 7 Cir., 88 F.2d 339, 340.

ferred to it. We cannot ignore the plain implications of the statements of this Court in the Wells case to the effect that in "respect to the donor the transfer was not in futuro"; that "the donees were competent to accept the gifts, and they did so immediately"; that "they [donees] were trusts, but they were no different from persons, for the Act so states;" that "the fact that those beneficiaries did not come into possession of the corpus until some time in the future, dependent upon some contingency, does not make the donor's act any the less a completed transfer to the trustees."

We conclude that for purposes of Section 504(b) each trust in the instant case was the person to whom the gift was made and that in respect to each gift to the trust only one exclusion of $5,000 is permissible, regardless of the number of beneficiaries of the trust.

In our opinion the District Court erred both in holding that the value of the gift of the fully paid life insurance policy should be based upon the cost of the duplication of the policy at the time of the gift, and in holding that "where a gift is made in trust are the beneficiaries, rather than the trust, the donees of the gift for the purpose of determining the number of exclusions of $5,000 allowable under Sec. 504(b) of the Revenue Act of 1932."

Since there is no dispute about the facts, the judgment of the District Court is reversed and the cause remanded with directions to the District Court to restate its conclusions of law as required by this opinion and to enter judgment in conformity therewith.

Judgment reversed.

LINDLEY, District Judge (dissenting in part).

I am of the opinion that the District Court was correct in its conclusion that where a gift is made in trust, for the purpose of determining the number of exemptions allowable under the gift tax law, the donee is the beneficiary rather than the trust. It seems to me that any other construction does violence to the congressional intent and promotes evasion of taxes. If the trust and not the beneficiary is the donee, then a donor may, by creating ten separate trusts, that is, creating ten trusts in ten separate per-sons as trustees and by designating the same beneficiary in each trust, give $50,-000 to one donee without payment of any gift tax. This result, I think, is not within the express purport or implication of the legislation. Rather the Congress meant to prevent tax-free donations in excess of $5,000 in any recipient.