**Allan E. MURRHEE, Plaintiff,**

v.

**Anthony PRINCIPI, Director of the Department of Veterans Affairs, and Linda Belton, Regional Director of the Department of Veterans Affairs, Defendants.**

No. 04–2228.

United States District Court,
C.D. Illinois,
Urbana Division.

April 14, 2005.

Allan E. Murrhee, Danville, IL, pro se.

David H. Hoff, US Atty., Urbana, IL, for Defendants.

### ORDER

BERNTHAL, United States Magistrate Judge.

In October 2004, Plaintiff, Allan Murrhee, acting *pro se*, filed a Complaint (# 2) against Defendants, Anthony Principi, Director of the Department of Veterans Affairs, and Linda Belton, Regional Director. In January 2005, Defendants filed a Second Motion To Dismiss Plaintiff's Complaint for Failure To State a Valid Cause of Action (# 20). After reviewing the parties' pleadings and memoranda, this Court **GRANTS** Defendants' Second Motion To Dismiss Plaintiff's Complaint for Failure To State a Valid Cause of Action (# 20).

### I. Background

The following background is taken from the complaint. In 1980, Plaintiff applied for a nonservice-connected pension. In March 1981, the Regional Office (hereinafter "RO") of the Department of Veterans Affairs (hereinafter "DVA") awarded him benefits based on medical evidence showing that he was permanently and totally disabled from a spinal cord injury. The award included a special monthly pension based on his need for regular aid and attendants. Plaintiff married in September 1988. In June 1990, Plaintiff submitted an Improved Pension Eligibility Verification Report reflecting his income and his wife's income. In a decision letter dated September 1990, the RO terminated Plaintiff's monthly pension benefits effective April 1, 1990.

In September 1998, a congressman forwarded to the DVA a letter from Plaintiff and requested that the letter be treated as (1) a request for review of the termination of Plaintiff's pension benefits, and (2) a claim for payment of pension and aid and attendants benefits without regard to Plaintiff's wife's income. In December 1998, the RO determined that Plaintiff's wife's income may be excluded when calculating income for the purpose of establishing entitlement to pension benefits. As a result, the RO reinstated Plaintiff's pension benefits effective October 1, 1998.

Plaintiff then asked for his pension benefits to be restored for the period prior to October 1, 1998. Plaintiff contended that the RO had wrongfully terminated his pension benefits because the RO had either actual or constructive knowledge of the nature of Plaintiff's wife's income. It appears that Plaintiff's claim was ultimately successful because Plaintiff's complaint alleged as follows: "The imperiled pleader disspite the D.A.V.'s complicity omissions, sought and gained full reinstatement of his much needed aid and attendants benefits" (*sic*). (# 2, p. 7.)

Plaintiff's complaint alleges that Defendants denied him due process by making him wait eight years before his pension benefits were reinstated and by delaying for another four years after reinstating his benefits before paying him back benefits for the eight-year gap. Specifically, Plaintiff's complaint states as follows: "I submit the D.V.A's. complicity omissions caused the imperiled pleader to incur the insufficient due process which recklessly endangered the imperiled pleader" (*sic*). (# 2, p. 7.) His complaint also alleges: "Motion for judgment of reckless endangerment by the D.V.A. for failure to permit the imperiled

pleader sufficient due process. Causing the imperiled pleader to grievously suffer the loss of much needed aid and attendants benefits thus entitling the imperiled pleader to reckless endangerment damage relief" (*sic*). (# 2, p. 10.) As a result of these delays, Plaintiff seeks damages in the amount of $8,000,000.

## II. Standard of Review

▮ "Rule 12(b)(1) requires that an action be dismissed if the court lacks jurisdiction over the subject matter of the lawsuit." *McCulley v. United States Dep't of Veterans Affairs*, 851 F.Supp. 1271, 1276 (E.D.Wis.1994), quoting *Unity Sav. Ass'n v. Fed. Sav. & Loan Ins. Corp.*, 573 F.Supp. 137, 140 n. 4 (N.D.Ill.1983). When ruling on such a motion, the Court "is not bound to accept as true the allegations of the complaint which tend to establish jurisdiction where a party properly raises a factual question concerning the jurisdiction of the ... court to proceed with the action." *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979). Instead, the Court should "look beyond the jurisdiction allegations in the complaint and view whatever evidence has been submitted on the issue in determining whether in fact subject matter jurisdiction exists." *Id.* at 783. Where subject matter jurisdiction is at issue, the party invoking jurisdiction bears the burden of supporting the allegations of jurisdictional facts with competent proof. *Id.* at 783; *McCulley*, 851 F.Supp. at 1276.

## III. Analysis

Defendants argue that the Court should dismiss the case for lack of subject matter jurisdiction. Defendants contend that, under Rule 12(b)(1), subject matter jurisdiction is lacking because Section 511 of Title 38 precludes district courts from exercising subject matter jurisdiction. Section 511 replaced 38 U.S.C. § 211 following enactment of the Veterans' Judicial Review Act (hereinafter "VJRA") (Pub.L. No. 100–687, 102 Stat. 4105 (1988) (codified as amended in scattered sections of Title 38)).

As an initial matter, it is unclear whether Plaintiff intends to assert an action against the United States government or against employees of the government in their individual capacities. Therefore, the Court will address both claims.

### A. Claims Against Employees in Their Individual Capacities

▮ If Plaintiff intended to sue Defendants in their individual capacities rather than the United States government, he has failed to state a claim for which relief can be granted. A *Bivens* action may be maintained against government employees who are sued in their individual capacities. *See Farmer v. Brennan*, 511 U.S. 825, 851, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). However, the United States Supreme Court has declined to create *Bivens* remedies when Congress has created "adequate remedial mechanisms for constitutional violations that may occur." *Schweiker v. Chilicky*, 487 U.S. 412, 423, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). Here, the comprehensive remedial structure of the statute provides an adequate remedy for constitutional violations, and thus precludes *Bivens* claims. *Hicks v. Small*, 69 F.3d 967, 969 (9th Cir.1995); *Marozsan v. United States*, 849 F.Supp. 617, 646–47 (N.D.Ind.1994), *aff'd*, 90 F.3d 1284 (7th Cir.1996); *Thomas v. Principi*, 394 F.3d 970, 975–76 (holding that the combination of a comprehensive remedial system and statutory preclusion of judicial review of benefits disputes forecloses a *Bivens* action against VA employees for constitutional torts in the context of a dispute over veterans' benefits). Thus, to the extent that Plaintiff's complaint attempts to state claims against De-

fendants in their individual capacities, the Court must dismiss those claims pursuant to Rule 12(b)(6).

## B.  Doctrine of Sovereign Immunity

■ Under the doctrine of sovereign immunity, the United States may not be sued without its consent. *Hercules, Inc. v. United States,* 516 U.S. 417, 422, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996); *Amwest Sur. Ins. Co. v. United States,* 28 F.3d 690, 694 (7th Cir.1994).  Sovereign immunity acts as a jurisdictional bar, depriving courts of subject matter jurisdiction.  *United States v. Sherwood,* 312 U.S. 584, 586–87, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Edwards v. United States Dep't of Justice,* 43 F.3d 312, 317 (7th Cir.1994).  This jurisdictional bar blocks suits which threaten "to impose upon the United States liability for money or property damages or some form of coercive injunctive relief." *United States v. Rural Elec. Convenience Co-op. Co.,* 922 F.2d 429, 434 (7th Cir.1991).  Furthermore, sovereign immunity "cannot be avoided by suing individual Federal departments, such as the VA." *Helfgott v. United States,* 891 F.Supp. 327, 329–30 (S.D.Miss.1994).

■ Congress may choose to waive sovereign immunity, but it must do so explicitly.  *In re Skupniewitz,* 73 F.3d 702, 704 n. 1 (7th Cir.1996).  Although creation of a private right of action may be inferred from a statute, a waiver of sovereign immunity may not be inferred; it must be expressed unequivocally.  *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); *Jones v. Brown,* 41 F.3d 634, 638 (Fed.Cir.1994).  When Congress does waive sovereign immunity, it may limit the circumstances of such waiver.  Courts should narrowly interpret the scope of a limited waiver.  *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996).

■ Waiver of sovereign immunity cannot be found in 28 U.S.C. § 1331 or the Administrative Procedures Act (hereinafter "APA").  Section 1331 creates federal question jurisdiction for "civil actions arising under the Constitution, laws, or treaties of the United States," but it does not waive sovereign immunity.  *Reed v. Reno,* 146 F.3d 392, 397–98 (6th Cir.1998); *Lonsdale v. United States,* 919 F.2d 1440, 1443 (10th Cir.1990).  The APA provides a limited waiver of sovereign immunity; however, it does not waive immunity from monetary damage awards.  *Lane,* 518 U.S. at 196, 116 S.Ct. 2092.  The APA provides as follows:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial relief thereof.  An action in a court of the United States seeking relief *other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702 (emphasis added).  Thus, neither 28 U.S.C. § 1331 nor the APA waives sovereign immunity as to Plaintiff's claim for monetary damages in the present case.

Two courts have stated that the VJRA provides a limited waiver of sovereign immunity for litigants seeking judicial review of benefits decisions by the Board of Veterans' Appeals.  *See Helfgott,* 891 F.Supp. at 329–30; *McCulley,* 851 F.Supp. at 1278.  We will not address the issue of whether or to what extent the VJRA waives sovereign immunity because the absence of fed-

eral subject matter jurisdiction renders the issue moot.

## C. Federal Subject Matter Jurisdiction

Assuming Plaintiff intends to state a claim against the United States government, this Court must have a statutory grant of subject matter jurisdiction before it can hear the case.

Section 1331 of Title 28 grants federal district courts broad federal question jurisdiction. However, Congress has attempted to "close the door" on district court jurisdiction to hear cases arising out of veterans benefits claims by passing 38 U.S.C. § 511(a). The question of subject matter jurisdiction generally arises in the context of three types of claims: Facial constitutional challenges to the statute itself, benefits claims, and constitutional challenges to the DVA's procedures or regulations. Whether Section 511(a) precludes district court jurisdiction depends on which of these claims is before the court. This Court will now consider whether Section 511(a) precludes federal district courts from exercising jurisdiction over each of these types of claims.

In *Johnson v. Robison*, the Supreme Court construed the jurisdictional implications of 38 U.S.C. § 211(a), the precursor of Section 511(a), expressing concern that statutory preclusion of facial challenges would "raise serious questions concerning the constitutionality of § 211(a)." *Johnson v. Robison*, 415 U.S. 361, 366, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). The Supreme Court ultimately held that Section 211(a) did not preclude district courts from reviewing facial challenges to the constitutionality of the statute itself. *Id.* at 373, 94 S.Ct. 1160 ("a construction of § 211(a) that does not extend the prohibitions of that section to actions challenging the constitutionality of laws providing benefits for veterans ... is the most reasonable construction").

Even after Congress passed the VJRA in 1988, federal courts have continued to follow *Johnson*, holding that Section 511(a) does not preclude federal district court jurisdiction to consider facial constitutional challenges. *See Zuspann v. Brown*, 60 F.3d 1156, 1158–59 (5th Cir. 1995) ("If Zuspann makes a facial challenge to a statute, then the district court has jurisdiction to hear his case."); *Larrabee v. Derwinski*, 968 F.2d 1497, 1501 (2d Cir.1992); *McCulley*, 851 F.Supp. at 1281–82. *But see Hall v. United States Dep't Veterans' Affairs*, 85 F.3d 532, 534 (11th Cir.1996) ("In the wake of the VJRA, the vitality of the *Johnson* holding with respect to the jurisdiction of the district courts to entertain facial constitutional attacks on veterans' benefits *legislation* (as opposed to the implementing rules and regulations) is debatable."). Thus, this Court continues to have jurisdiction to hear facial constitutional challenges.

Although district courts retain jurisdiction to review facial constitutional challenges to veterans' benefits statutes, Section 511(a) effectively precludes district court review of veterans' benefits claims. *See McCulley*, 851 F.Supp. at 1282 (stating that the VJRA has channeled challenges to veterans' benefits decisions to the Court of Veterans Affairs and the Federal Circuit); *see also Marozsan v. United States*, 852 F.2d 1469, 1471 n. 3 (7th Cir.1988) ("Section 211(a) clearly precludes our review of the Administrator's decision to set benefits and disability levels") (*Marozsan I*). Moreover, a plaintiff cannot avoid Section 511(a) by disguising his benefits claim in constitutional clothing. *McCulley*, 851 F.Supp. at 1280. The Seventh Circuit court has stated that "the Due Process Clause is not a guarantee against incorrect results." *Marozsan v. United States*, 90 F.3d 1284, 1289 (7th Cir.1996) (*Marozsan II*). Thus, the Court does not have juris-

diction to consider challenges to benefits decisions even when those benefits claims are cloaked in constitutional language.

Lastly, this Court considers whether district courts retain jurisdiction to hear constitutional challenges not to the statute itself, but to the DVA's regulations and procedures. In *Marozsan I*, the Seventh Circuit court extended *Johnson v. Robison*, holding that Section 211(a) could not preclude district courts from hearing constitutional attacks on the DVA's regulations and procedures. *Marozsan I*, 852 F.2d at 1472. The Seventh Circuit reasoned that "[i]t is hard to see how the Court would insist on the right to review the constitutionality of legislation, but hold immune from review all unconstitutional administrative actions taken pursuant to that legislation." *Id.* at 1476. The court also emphasized that if courts were precluded from reviewing constitutional challenges to administrative actions, veterans would be left without any forum to pursue those constitutional claims. *Id.* at 1477–78.

A few months after the *Marozsan I* decision, Congress, concerned that judicial extensions to *Johnson* would overexpose DVA benefits decisions to judicial review, passed the VJRA. *Larrabee*, 968 F.2d at 1500–01. The VJRA amended the former Section 211(a) to provide as follows:

> The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans.... [T]he decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

38 U.S.C. § 511(a). Other provisions of the VJRA establish the path to appellate review of the Secretary's benefits decisions as follows: Claimants may first appeal to the Board of Veterans' Appeals (38 U.S.C. § 7104(a)), then to the Court of Appeals for Veterans' Claims (38 U.S.C. § 7252(a)), to the Federal Circuit (38 U.S.C. § 7292(c)), and ultimately to the Supreme Court (*id.*). By channeling judicial review to the Federal Circuit rather than completely precluding it, Congress hoped to avoid the constitutional attacks that had previously limited the preclusive effect of Section 211(a). *Larrabee*, 968 F.2d at 1501.

■■■ Several courts have reached decisions that indicate the VJRA was successful in this regard. *See Beamon v. Brown*, 125 F.3d 965, 974 (6th Cir.1997); *Larrabee*, 968 F.2d at 1501; *Menendez v. United States*, 67 F.Supp.2d 42, 47 (D.P.R.1999); *McCulley*, 851 F.Supp. at 1282. Thus, by leaving the door partly open, it appears that Congress has successfully precluded district courts from hearing constitutional challenges to the DVA's regulations and procedures.

Given the changes to Section 211(a) enacted by the VJRA, it might appear that *Maroszan I* is no longer good law. However, in *Czerkies v. United States Department of Labor*, the Seventh Circuit stated, "*Marozsan [I]* was an en banc decision, and nothing has happened since it was decided that would justify our overruling it." *Czerkies v. United States Dep't of Labor*, 73 F.3d 1435, 1438 (7th Cir.1996). At first blush, this language from *Czerkies* seems to imply that the VJRA was unsuccessful in precluding district court review of constitutional challenges to DVA regulations and procedures. But closer inspection of *Czerkies* does not support such a conclusion.

In *Czerkies*, the plaintiff, a federal employee, brought a due process claim premised on denial of workers' compensation

benefits under the Federal Employees Compensation Act (hereinafter "FECA"). *Id.* at 1437. The FECA contains a door-closing provision that attempts to preclude judicial review of all constitutional challenges to administrative regulations and procedures. *See* 5 U.S.C. § 8128(b). In *Czerkies,* the Seventh Circuit court considered "the applicability of [the FECA] door-closing provision, *and ones like it,* to constitutional claims." *Id.* (emphasis added). By "ones like it," the Supreme Court was referring to door-closing provisions that completely preclude judicial review of constitutional claims as opposed to provisions which merely channel judicial review. To illustrate, the Supreme Court referred to its decision in *Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 215, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994), which held that a door-closing statute contained in the Mine Safety Act could preclude district court review of due process claims. The *Czerkies* court distinguished the judicial review provision at issue in *Thunder Basin* because of a "most important point—decisions [of the agency that regulated mine safety] were reviewable by a federal court of appeals." *Czerkies,* 73 F.3d at 1439.

According to the *Czerkies* court, Section 211(a), the pre-VJRA provision at issue in *Marozsan I,* was indeed similar to the door-closing provision in the FECA because it attempted to completely preclude judicial review of constitutional claims. *Czerkies* held that provisions similar to Section 211(a) and the relevant FECA provision cannot preclude district court review of constitutional challenges because plaintiffs would be left without any forum in which to bring such claims. However, Section 511(a) differs from Section 211(a) and the FECA because it merely channels judicial review to the Federal Circuit instead of completely precluding it. Thus, the *Czerkies* court's statement that *Marozsan I* is still good law should be read as an affirmation of the *Marozsan I* holding that

door-closing provisions cannot completely preclude judicial review of constitutional attacks on agency regulations. Nevertheless, because Section 511(a) does not attempt to completely preclude judicial review, the rule articulated in *Marozsan I* and affirmed in *Czerkies*—allowing district courts to review constitutional challenges to an agency's regulations and procedures—does not apply to it.

■ Based on the foregoing discussion, this Court concludes that it can exercise subject matter jurisdiction over only one type of challenge to veterans' benefits claim, the facial constitutional challenge to the veterans' benefits statutes themselves. Here, Plaintiff's complaint challenges the agency's conduct, therefore, the claim cannot be construed to raise a facial constitutional challenge. Because district courts lack subject matter jurisdiction to consider the other two types of claims, the Court dismisses Plaintiff's case pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

## IV. Summary

For the reasons set forth above, the Court **GRANTS** Defendant's Second Motion To Dismiss Plaintiff's Complaint for Failure To State a Valid Cause of Action (# 20). This case is terminated.