Lewis E. JONES, Plaintiff-Appellant,

v.

Clifford ALEXANDER, Secretary of the Army, Defendant-Appellee.

No. 77–2337.

United States Court of Appeals, Fifth Circuit.

Jan. 10, 1980.

Rehearing and Rehearing En Banc Denied Feb. 14, 1980.

Charles C. Carter, Columbus Ga., for plaintiff-appellant.

Gregory J. Leonard, Asst. U. S. Atty., Macon, Ga., L. Neal Ellis Jr., Captain, JAGC, Military Personnel Branch, Louis R. Davis, Major, Litigation Div., Dept. of Army, Washington, D. C., for defendant-appellee.

Before FAY, RUBIN and HATCHETT, Circuit Judges.

FAY, Circuit Judge:

Lewis Jones was passed over for promotion by two Army selection boards. He filed this action to prevent his release from active duty and for correction of his mili-

tary records. The district court denied an injunction and Jones was released. The court then granted the Secretary of the Army's motion for summary judgment, and Jones appeals. The core issues are whether the Secretary can remedy an improperly constituted promotion board and, if so, whether the Army has taken proper steps to correct the error here. We affirm the grant of summary judgment.

## I. FACTS AND PROCEEDINGS

Periodically, the Army convenes promotion selection boards to consider applicants for the next grade.[1] An officer passed over by two successive boards is released from active duty. Army Reg. 635–100, ¶ 3–65. See 10 U.S.C. § 681(a) (1976). In 1975, a promotion selection board convened (1975 Board). Jones, a warrant officer in the United States Army Reserve, was not selected for promotion. In February, 1976, another selection board convened (1976 board). Again, Jones was not selected. Meanwhile, some 1300 officers applied to the Army Board for the Correction of Military Records (Correction Board) for changes in their records because of defects in the 1975 selection board proceedings. The Correction Board found adversely for the applicants on some claims, but did find that, contrary to statute, no reserve officers were on the 1975 boards. The Correction Board recommended that new boards with the appropriate number of reserve officers convene to reconsider all primary zone[2] applicants, using records reconstituted to appear as they had in 1975 and the letter orders of instruction and guidance previously furnished to the original 1975 board. Following the Correction Board's recommendation, the Secretary ordered that a reconstituted board (relook board) convene during June, 1976. Although some officers previously not chosen for promotion were selected by the relook board, Jones was not one of those recommended. Thereafter the Correction Board denied Jones's request to change his records, and on November 10, 1976, Jones received notice that he would be released from active duty. One month before his scheduled release, the court denied his requests for a temporary restraining order and an injunction prohibiting the Army from releasing him from active duty. Jones commenced this action to recover for violation of his statutory and constitutional rights. The Army then released Jones, although he retained his reserve officer commission and received $15,000 readjustment pay. Four months later, the district court granted the Army's motion for summary judgment, and this appeal ensued.

## II. JURISDICTION

■ A preliminary concern is whether the district court had subject matter jurisdiction. Jones alleged jurisdiction under the Tucker Act, 28 U.S.C. § 1346(a) (1976), the Declaratory Judgment Act, 28 U.S.C. § 2201 (1976), and the Mandamus Act, 28 U.S.C. § 1361 (1976). The Tucker Act grants jurisdiction to the district court for actions against the United States when damages are less than $10,000. Actions for more than that amount must be brought in the Court of Claims. During oral argument, counsel for Jones moved to amend

---

1. This system is well-detailed in other opinions dealing with almost identical situations. *Dilley v. Alexander*, 195 U.S.App.D.C. ——, 603 F.2d 914 (D.C.Cir. 1979); *Doyle v. United States*, 599 F.2d 984 (Ct.Cl.1979). Therefore, we will only briefly outline the structure. Congress has exercised its power under article II, section 2, clause 2 of the Constitution to vest in the President the power to appoint warrant officers. The President alone makes temporary appointments of commissioned officers below the grade of lieutenant colonel and these appointments can be vacated at any time. 10 U.S.C. § 3447(b)–(c) (1976). The Secretary of the Army's regulations govern promotion of warrant officers under these temporary appointments. 10 U.S.C. § 3449 (1976). In addition, the Secretary has the power to release a reserve officer from active duty at any time. 10 U.S.C. § 681(a) (1976).

2. Applicants for promotion are divided into two zones of consideration according to seniority. Army Reg. 624–100, § I, ¶ 2(i)–(j). Nonselection of a secondary (junior) zone applicant is not a "pass over" resulting in removal from active duty. At some point a secondary zone applicant is reclassified into the primary zone. Jones was a primary zone applicant.

the complaint to strike the prayer for actual damages, which had not been limited to $10,000. *See* 28 U.S.C. § 1653 (1976) (allowing amendment). Counsel for the Secretary raised no objection, and we grant the motion. The Tucker Act is therefore no longer in question because that Act only applies to suits for money damages. *Hunsucker v. Phinney*, 497 F.2d 29, 36 (5th Cir. 1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975). The Declaratory Judgment Act is not an independent ground for jurisdiction; it permits the award of declaratory relief only when other bases for jurisdiction are present. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Seibert v. Baptist*, 594 F.2d 423, 428 (5th Cir. 1979); *United States ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456, 460 (5th Cir. 1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978); *Red Lobster Inns of America, Inc. v. New England Oyster House, Inc.*, 524 F.2d 968, 969 (5th Cir. 1975). Therefore, the Mandamus Act (section 1361) is the sole jurisdictional leg upon which this action stands.

In resolving whether section 1361 jurisdiction is present, allegations of the complaint, unless patently frivolous, are taken as true to avoid tackling the merits under the ruse of assessing jurisdiction. *Carter v. Seamans*, 411 F.2d 767, 770 (5th Cir. 1969), *cert. denied*, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121. The test for jurisdiction is whether mandamus would be an appropriate means of relief. *Id.* at 773. Three elements must exist before mandamus can issue: (1) the plaintiff must have a clear right to the relief, (2) the defendant must have a clear duty to act, and (3) no other adequate remedy must be available. *Winningham v. United States Department of Housing and Urban Development*, 512 F.2d 617, 620–21 (5th Cir. 1975); *Carter v. Seamans*, 411 F.2d at 773. Taking the plaintiff's allegations at face value, we find the court had jurisdiction. This case is similar to *Carter v. Seamans*, 411 F.2d 767 (5th Cir. 1969), in which this court adopted the district court's opinion and held that section 1361 jurisdiction was available. In *Carter*, however, the trial court declined to assert its power for fear that its exercise would undermine the jurisdiction of the Court of Claims in the parallel damage action. *Id.* at 772–76. We need not exercise this discretion, because Jones waives all right to damages and no Court of Claims action exists. *Cf. Larsen v. Hoffman*, 444 F.Supp. 245 (D.D.C.1977) (in facts similar to Jones, mandamus jurisdiction declined because of exclusive Court of Claims jurisdiction). We therefore hold that jurisdiction is present under section 1361, and that it is also now proper to consider Jones's claim for declaratory relief.

## III. RELIEF SOUGHT

Before turning to the parties' arguments, we will focus briefly on issues Jones is not raising, because they distinguish *Jones* from other cases on relook boards. Jones does not contest the 1976 board's consideration. *Cf. Dilley v. Alexander*, 195 U.S.App.D.C. 332, 342, 603 F.2d 914, 924 (1979) (reversal when 1976 board considered record erroneously including defective 1975 pass over). Jones does not question the relook board's consideration of only those officers in the primary zone. *See Dilley v. Alexander*, 195 U.S.App.D.C. at 342–43, 603 F.2d at 924–25; *Doyle v. United States*, 599 F.2d 984 (Ct.Cl.1979). As noted above, Jones is not requesting money damages.[3]

Jones wishes the court to declare that the 1975 board's actions were void *ab initio*, to order that the Army alter Jones's records to remove all indication of the 1975 pass over, and to order that the Army reinstate him[4] as if he had not been passed over in 1975.

---

**3.** Unlike the plaintiff in *Doyle v. United States*, 599 F.2d 984 (Ct.Cl.1979), Jones was retained on active duty more than ninety days after the relook board's decision. Doyle was granted back pay for the time between his release and ninety days after notice of the relook board's action. Even if he had not waived his claim to damages, Jones would not be entitled to these damages.

**4.** In oral argument, counsel for Jones stated that Jones has now returned to active duty, but

## IV. ARGUMENTS

The litigants' arguments center on whether the 1975 board and the relook board are "selection boards" for pass over purposes. Jones claims the 1975 board was void *ab initio* because no reserve officers sat on the board. He claims this procedural error is irremediable, and that the Secretary's only choice is to allow all applicants not selected by the 1975 board to continue on active duty until passed over by two other successive selection boards. Jones claims the relook board would have to be a "selection board" for there to be a "pass over" within the meaning of the two-pass over rule of the selection out regulation. He argues that the relook board lacks the indicia of a selection board under the regulations, and even if it were a selection board, these boards cannot meet within nine months of each other. Army Reg. 624–100, ¶ 36; 635–100, ¶ 3–65. Therefore, according to Jones, if the relook board is considered a selection board, it is also void because it met in June, only four months after the regular February, 1976, selection board.

The Secretary first asserts that the 1975 board is not totally invalid, that use of relook boards is a proper remedy, and that the nine-month regulation is inapplicable because the relook board, in effect, turned the clock back to 1975. Although the Army admits that the composition of the original 1975 board was improper, it argues that the Secretary has broad remedial powers and properly cured the error here by convening the relook board. The Army also argues by analogy to *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), that even if the 1975 and relook boards were improperly convened, Jones has the burden of showing that but for the compositional error, he would have been promoted. Even if Jones did meet this burden, the Secretary argues he proved the error was harmless, because when the properly constructed relook board reviewed Jones's record, it also found Jones was not among the "best qualified" for promotion.

## V. THE REMEDY WAS PROPER

■ The 1975 board was improperly constituted because no reserve officers were included in its membership.[5] We cannot agree with Jones, however, that this defect renders the board's actions a nullity, and requires reinstatement until another board reviews his record. To find the 1975 board's actions void *ab initio* would unduly impinge on the discretion granted the Secretary to make personnel decisions. See *Dilley v. Alexander*, 195 U.S.App.D.C. at 339–40, 603 F.2d at 921–22; *Knehans v. Alexander*, 184 U.S.App.D.C. 420 566 F.2d 312 (1977), *cert. denied*, 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 83 (1978). In addition, the 1975 board's actions could not be void for those who were promoted. See *Dilley v. Alexander*, 195 U.S.App.D.C. at 339, 603 F.2d at 921. The defect in composition, therefore, does not totally invalidate the 1975 board's action.

---

the court was not informed in what capacity or by what procedure.

5. Each officer on active duty can have both a permanent and a temporary grade; the temporary rank may be higher than the permanent one. 10 U.S.C. § 3442(c) (1976). The requirement that reserve officers be members of selection boards recommending temporary promotions (temporary boards) is derived from 10 U.S.C. § 266(a) (1976):

> Each board convened for the appointment promotion, demotion, involuntary release from active duty, discharge, or retirement of Reserves shall include an appropriate number of Reserves, as prescribed by the Secretary concerned under standards and policies prescribed by the Secretary of Defense.

This section clearly applies to selection boards considering promotions to permanent grades, and is explicitly made applicable to temporary boards by Army Reg. 624–100, ¶ 16. Although the Army argued in *Dilley* and *Doyle* that this regulation left the Secretary some discretion in whether reserve officers would be on the temporary boards, this line of defense has not been pursued here and was soundly rejected in those two decisions. *Dilley v. Alexander*, 195 U.S. App.D.C. 332, 603 F.2d 914 (D.C.Cir. 1979); *Doyle v. United States*, 599 F.2d 984 (Ct.Cl. 1979). For another relook board case decided on statute of limitations grounds, *see Ellzey v. United States*, No. 223–78 (Ct.Cl. Jan. 19, 1979).

■ Nevertheless, the lack of reserve members is a conceded violation of the regulation and statute that govern the creation of the 1975 board. The question, then, is what action the Secretary can pursue to remedy this compositional flaw. The Secretary, acting through the Correction Board, has broad discretion "to correct an error or remove an injustice." 10 U.S.C. § 1552(a) (1976). We cannot say the Secretary acted arbitrarily or capriciously in exercising this power and formulating the relook board as a remedy.[6] A relook board, with reserve officers as members, considered the applications of all officers in the primary zone, including those already promoted by the 1975 and 1976 boards. These applications were totally reconstituted to appear as they had in 1975. The relook board used the same criteria in reaching its selection decisions as were used by the 1975 board. This remedy does not appear to be arbitrary and capricious but was an entirely reasonable attempt to mirror the statute's requirements in a fair manner. Counsel debate whether the relook board was an entirely new "selection board" within the meaning of the pass over regulations. Regardless of whether the relook board is considered a promotion board in its own right, it nevertheless was a proper remedy provided by the Secretary to ameliorate the defect in the 1975 board. See Coughlin v. Alexander, 446 F.Supp. 1024 (D.D.C.1978), aff'd, 191 U.S.App.D.C. 212, 589 F.2d 1115 (1979); Fuller v. Alexander, 440 F.Supp. 380, 382 (D.D.C.1977); Whitehead v. Alexander, 439 F.Supp. 910, 912–13 (D.D.C.1977). Taken together, the relook board and the 1975 board can properly constitute a "pass over" within the meaning of the regulations.

■ Because we do not reach the question whether the relook board was a separate promotion board, we need not address Jones's argument that the relook board violated the regulation requiring nine months between successive boards. We will note, however, that one purpose of that regulation is apparently to allow an officer time to improve his record before his application reaches the second board. Because the relook board considered reconstituted records, with no reference to activities occurring after the 1976 board, the nine-month waiting period regulation appears inapplicable.

Because we uphold the district court's finding that the Secretary did not abuse his power under section 1552, we also need not decide whether the Mount Healthy harmless error principles are applicable.[7] See

---

**6.** In footnote 20 of *Dilley v. Alexander*, the District of Columbia Circuit Court stated, "Although this provision [10 U.S.C. § 1552(a)] gives the Corrections Board broad discretion to remedy errors in military records, . . . it does not entitle the board to violate express statutory directives in doing so . . . ." 195 U.S.App.D.C. at —— n.20, 603 F.2d at 924 n.20 (citations omitted). The court characterized the convening of relook boards as an "ends-justifying-the-means procedure" and seemed to find a statutory violation in the relook boards. In our view, however, the violation was in the composition of the original 1975 board, not in the remedy the Secretary designed.

**7.** Jones argued that *Mount Healthy* did not apply when a procedural defect caused the decision to be defective. This procedure-substance distinction is not persuasive. In *Carey v. Piphus*, 435 U.S. 247, 260–61, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), students who were suspended from school without hearings claimed violations of their constitutional rights. The Supreme Court agreed with the Seventh Circuit that the school board in *Carey* could prove on remand whether the students would have been suspended even if a proper hearing had occurred. The Court noted but did not expressly overrule a contrary line of cases in which procedural due process was denied public employees with property interests in their employment who were fired with cause. 435 U.S. at 260 n.15, 98 S.Ct. 1042, 55 L.Ed.2d 252. The Court held that even if the suspensions were justified, nominal damages were appropriate without proof of actual damage when such constitutional rights are infringed. Jones, however, asserts a statutory right and has waived all right to damages. See generally *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); *Doyle v. United States*, 599 F.2d 984 (Ct.Cl.1979); *Newman v. Board of Education*, 594 F.2d 299, 306 (2d Cir. 1979); *Wilson v. Thompson*, 593 F.2d 1375, 1385–87 (5th Cir. 1979); *Diorio v. County v. Delaware*, 592 F.2d 681, 690 n.16 (3d Cir. 1978); *Burt v. Abel*, 585 F.2d 613, 616 (4th Cir. 1978); *Hernandez del Valle v. Santa Aponte*, 575 F.2d 321, 324 (1st Cir. 1978).

This court's decision in *Johnson v. Reed*, No. 77–2570, 609 F.2d 784 (5th Cir. 1980) outlines the harmless error standard to be applied to

*Johnson v. Reed,* No. 77–2570, 609 F.2d 784 (5th Cir. 1980).

## VI.  CONCLUSION

We uphold the district court and find that despite the defect in the 1975 board, the Secretary took proper action to remedy this defect by convening the relook board, and that the nonselection of Jones by the 1975 board, the relook board, and the 1976 board constituted the two pass overs necessary for the Army to release Jones from active duty.

The district court's order entering summary judgment for the defendant is AFFIRMED.

Correction Board actions.  Harmless error, however, is not an issue unless it is first proved that the Secretary acted arbitrarily and capriciously.  Jones did not meet this threshold burden.